**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF WASHINGTON**

Case No. 1:14-CV-03115-VEB

CHRISTY REICHERT,

                    Plaintiff,                    DECISION AND ORDER

vs.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

                    Defendant.

## I. INTRODUCTION

In August of 2006, Plaintiff Christy Reichert applied for Supplemental Security Income ("SSI") benefits and Disability Insurance Benefits ("DIB") under the Social Security Act. The Commissioner of Social Security denied the applications.

Plaintiff, represented by D. James Tree, Esq., commenced this action seeking judicial review of the Commissioner's denial of benefits pursuant to 42 U.S.C. §§ 405 (g) and 1383 (c)(3).  The parties consented to the jurisdiction of a United States Magistrate Judge. (Docket No. 4).

On January 29, 2015, the Honorable Rosanna Malouf Peterson, Chief United States District Judge, referred this case to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket No. 20).

## II. BACKGROUND

The procedural history may be summarized as follows:

Plaintiff applied for SSI benefits and DIB on August 14, 2006. (T at 246-47).[1] The applications were denied initially and on reconsideration and Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  On January 27, 2009, a hearing was held before ALJ Richard A. Say. (T at 50).  Plaintiff appeared with her attorney and testified. (T at 54-64, 69-71).  The ALJ also received testimony from Richard Keough, a vocational expert (T at 64-68, 71-80).

On July 14, 2009, the ALJ issued a written decision denying the applications and finding that Plaintiff was not entitled to benefits.  (T at 122-34).  On February

---

[1] Citations to ("T") refer to the administrative record at Docket No. 11.

DECISION AND ORDER – REICHERT v COLVIN 14-CV-03115-VEB

24, 2011, the Social Security Appeals Council granted Plaintiff's request for review, vacated the ALJ's decision, and remanded the case for further proceedings. (T at 158-60).

ALJ Say held a further administrative hearing on November 30, 2011. (T at 82). Plaintiff again appeared with her attorney and testified. (T at 86-95). The ALJ received testimony from Jennifer Gaffney, a vocational expert (T at 105-114), and Candy Didier, Plaintiff's treating mental health therapist. (T at 95-105).

In a written decision issued on December 20, 2011, the ALJ found that Plaintiff was not entitled to benefits. (T at 19-43). The ALJ's second decision became the Commissioner's final decision on June 19, 2014, when the Appeals Council denied Plaintiff's request for review. (T at 1-6).

On August 14, 2014, Plaintiff, acting by and through her counsel, timely commenced this action by filing a Complaint in the United States District Court for the Eastern District of Washington. (Docket No. 5). The Commissioner interposed an Answer on November 17, 2014. (Docket No. 10).

Plaintiff filed a motion for summary judgment on January 12, 2015. (Docket No. 18). The Commissioner moved for summary judgment on March 23, 2015. (Docket No. 24). Plaintiff filed a reply brief on April 6, 2015. (Docket No. 25).

DECISION AND ORDER – REICHERT v COLVIN 14-CV-03115-VEB

For the reasons set forth below, the Commissioner's motion is denied, Plaintiff's motion is granted, and this case is remanded for calculation of benefits.

## III. DISCUSSION

### A.   Sequential Evaluation Process

The Social Security Act ("the Act") defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act also provides that a plaintiff shall be determined to be under a disability only if any impairments are of such severity that a plaintiff is not only unable to do previous work but cannot, considering plaintiff's age, education and work experiences, engage in any other substantial work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). Thus, the definition of disability consists of both medical and vocational components. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520, 416.920. Step one determines if the person is engaged in substantial gainful activities. If so,

benefits are denied. 20 C.F.R. §§ 404. 1520(a)(4)(i), 416.920(a)(4)(i). If not, the decision maker proceeds to step two, which determines whether plaintiff has a medially severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

If plaintiff does not have a severe impairment or combination of impairments, the disability claim is denied. If the impairment is severe, the evaluation proceeds to the third step, which compares plaintiff's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); 20 C.F.R. § 404 Subpt. P App. 1. If the impairment meets or equals one of the listed impairments, plaintiff is conclusively presumed to be disabled. If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents plaintiff from performing work which was performed in the past. If a plaintiff is able to perform previous work that plaintiff is deemed not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At this step, plaintiff's residual functional capacity (RFC) is considered. If plaintiff cannot perform past relevant work, the fifth and final step in the process determines whether plaintiff is able to perform other work in the national economy in view of plaintiff's residual functional capacity, age, education and past

work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

The initial burden of proof rests upon plaintiff to establish a *prima facie* case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). The initial burden is met once plaintiff establishes that a mental or physical impairment prevents the performance of previous work. The burden then shifts, at step five, to the Commissioner to show that (1) plaintiff can perform other substantial gainful activity and (2) a "significant number of jobs exist in the national economy" that plaintiff can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

## B.   Standard of Review

Congress has provided a limited scope of judicial review of a Commissioner's decision. 42 U.S.C. § 405(g). A Court must uphold a Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence. *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). "The [Commissioner's] determination that a plaintiff is not disabled will be upheld if the findings of fact are supported by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983)(citing 42 U.S.C. § 405(g)). Substantial evidence is more than a mere scintilla,

*Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n 10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan*, 888 F.2d 599, 601-02 (9th Cir. 1989). Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971)(citations omitted). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Mark v. Celebreeze*, 348 F.2d 289, 293 (9th Cir. 1965). On review, the Court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989)(quoting *Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the Commissioner, not this Court, to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400. If evidence supports more than one rational interpretation, the Court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1987). Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding

of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-30 (9th Cir. 1987).

## C.   Commissioner's Decision

The ALJ determined that Plaintiff had not engaged in substantial gainful activity since August 1, 2005 (the alleged onset date) and met the insured status requirements of the Social Security Act through March 31, 2011.  The ALJ found that Plaintiff's affective disorder, anxiety disorder, and personality disorder were "severe" impairments under the Act. (Tr. 24-25).

However, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments set forth in the Listings. (T at 25-26).

The ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform work at all exertional levels, except that she is limited to unskilled work and routine tasks with only superficial interaction with others and no close cooperation or coordination with anyone. (T at 27).

The ALJ noted that Plaintiff was unable to perform any past relevant work. (T at 34).  Considering Plaintiff's age (34 on the alleged onset date), education (high school), work experience, and residual functional capacity (work at all exertional levels, with limitations outlined above), the ALJ determined that there were jobs that

exist in significant numbers that Plaintiff can perform. (T at 34-35).  As such, the ALJ concluded that Plaintiff was not disabled, as defined under the Social Security Act, between August 1, 2005 (the alleged onset date) and December 20, 2011 (the date of the decision) and was therefore not entitled to benefits. (Tr. 35-36).  As noted above, the ALJ's decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review. (Tr. 1-6).

## D.    Plaintiff's Arguments

Plaintiff contends that the Commissioner's decision should be reversed.  She offers four (4) main arguments.  First, she contends that the ALJ did not properly weigh the medical opinion evidence.   Second, Plaintiff challenges the ALJ's credibility determination.   Third, she argues that the ALJ erred by finding that Plaintiff's affective disorder did not satisfy §12.04 of the Listings.  Fourth, Plaintiff argues that the ALJ's step five analysis is flawed.  This Court will address each argument in turn.

DECISION AND ORDER – REICHERT v COLVIN 14-CV-03115-VEB

# IV. ANALYSIS

## A.    Medical Opinion Evidence

In disability proceedings, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion is given more weight than that of a non-examining physician. *Benecke v. Barnhart*, 379 F.3d 587, 592 (9th Cir. 2004); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). If the treating or examining physician's opinions are not contradicted, they can be rejected only with clear and convincing reasons. *Lester*, 81 F.3d at 830. If contradicted, the opinion can only be rejected for "specific" and "legitimate" reasons that are supported by substantial evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995).

An ALJ satisfies the "substantial evidence" requirement by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014)(quoting *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998)). "The ALJ must do more than state conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id*.

In this case, the record contains numerous assessments from treating and examining medical sources.

DECISION AND ORDER – REICHERT v COLVIN 14-CV-03115-VEB

### 1.       Treating Mental Health Therapist

Throughout the relevant time period, Plaintiff received mental health therapy at Central Washington Comprehensive Mental Health.  Her primary therapist was Candi Didier, M.S.   Ms. Didier performed nine (9) psychological evaluations between November 2005 and August 2011.  She consistently concluded that Plaintiff had significant functional limitations.  In particular, on several occasions, Ms. Didier opined that Plaintiff's psychiatric impairments would "significantly" or "very significantly" interfere with her ability to perform routine tasks and learn new tasks. (T at 434, 528, 543, 575, 719, 738, 1121).   She also consistently found that Plaintiff's impairments would "significantly" or "very significantly" interfere with her ability to maintain appropriate workplace behavior (T at 427, 528, 575, 719, 739, 1121) and respond appropriately to and tolerate the pressures and expectations of a normal work setting. (T at 427, 434, 528, 739).

In July of 2009, Ms. Didier opined that Plaintiff was unable to work due to her psychiatric symptoms and inability to work a regular work schedule.  She noted Plaintiff's increasing issues coping with daily concerns and attending to self-care. (T at 716).  Ms. Didier assigned a Global Assessment of Functioning ("GAF") score[2] of

---

[2] "A GAF score is a rough estimate of an individual's psychological, social, and occupational functioning used to reflect the individual's need for treatment." *Vargas v. Lambert*, 159 F.3d 1161, 1164 n.2 (9th Cir. 1998).

DECISION AND ORDER – REICHERT v COLVIN 14-CV-03115-VEB

45 (T at 716), which is indicative of serious impairment in social, occupational or school functioning. *Onorato v. Astrue,* No. CV-11-0197, 2012 U.S. Dist. LEXIS 174777, at *11 n.3 (E.D.Wa. Dec. 7, 2012).

In April of 2011, Ms. Didier assessed marked limitations with regard to Plaintiff's ability to perform activities within a schedule, maintain regular attendance, be punctual within customary tolerances, and sustain an ordinary routine without special supervision. (T at 788).

In August of 2011, Ms. Didier expressed hope that Plaintiff could work part-time "in the future," but reported that working full-time "may not be achievable." (T at 1122). She described Plaintiff as "work[ing] hard at learning new skills" and noted that she "participates regularly in group [therapy]." (T at 1122). She opined that vocational training or services would not minimize or eliminate the barriers to employment. (T at 1122).

Ms. Didier testified at the second administrative hearing, held on November 30, 2011. She has worked in the mental health field since 1982 and treated Plaintiff for approximately six (6) years. (T at 96). As of the hearing date, she was seeing Plaintiff weekly. (T at 96). Ms. Didier testified that Plaintiff has never shown signs of malingering and, in fact, "works very hard in therapy." (T at 97). She has observed Plaintiff during anxiety attacks, acting "very frightened, almost childlike."

DECISION AND ORDER – REICHERT v COLVIN 14-CV-03115-VEB

(T at 98).   According to Ms. Didier, Plaintiff "struggles daily with pretty intense anxiety and moments where she forgets . . . what she needs to do to manage that." (t at 98-99).   She does not believe Plaintiff is able to cope with the demands of a "low-stress type job, eight hours a day, five days a week." (T at 99).   The primary focus of therapy has been to "help [Plaintiff] be skillful and manage her home life and her activities every day." (T at 100).   Ms. Didier described Plaintiff as "markedly impaired" with regard to her ability to respond appropriately to usual work situations and changes in a routine work setting. (T at 100).   She testified that Plaintiff's GAF score was "probably between 45 and 50 right now." (T at 102).

In evaluating a claim, the ALJ must consider evidence from all of the claimant's medical sources. 20 C.F.R. §§ 404.1512, 416.912. Medical sources are divided into two categories: "acceptable" and "not acceptable." 20 C.F.R. § 404.1502.   Acceptable   medical   sources   include   licensed   physicians   and psychologists. 20 C.F.R. § 404.1502. Medical sources classified as "not acceptable" (also known as "other sources") include nurse practitioners, therapists, licensed clinical social workers, and chiropractors. SSR 06-03p.   The opinion of an acceptable medical source is given more weight than an "other source" opinion. 20 C.F.R. §§ 404.1527, 416.927.   For example, evidence from "other sources" is not sufficient to establish a medically determinable impairment. SSR 06-03p.  However,

DECISION AND ORDER – REICHERT v COLVIN 14-CV-03115-VEB

"other source" opinions must be evaluated on the basis of their qualifications, whether their opinions are consistent with the record evidence, the evidence provided in support of their opinions, and whether the other source is "has a specialty or area of expertise related to the individual's impairment." *See* SSR 06-03p, 20 CFR §§404.1513 (d), 416.913 (d).  The ALJ must give "germane reasons" before discounting an "other source" opinion. *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993).

The ALJ discounted Ms. Didier's opinion, citing several factors.  The ALJ concluded that Ms. Didier's assessment was based "primarily" on Plaintiff's subjective complaints and ALJ found the limitations inconsistent with treatment notes and plans.  In addition, the ALJ concluded that the assessment was inconsistent with Plaintiff's abilities as demonstrated by her activities of daily living. (T at 32-33).

The ALJ's consideration of Ms. Didier's opinion was flawed for the following reasons.  First and foremost, the ALJ appears to have considered Ms. Didier's opinion in isolation, failing to account for its consistency with the assessments of all of the other treating and examining providers (discussed further below).  Second, the ALJ did not afford sufficient weight to Ms. Didier's expertise and extended treating relationship with Plaintiff.  In particular, the suggestion that Ms. Didier's assessment

DECISION AND ORDER – REICHERT v COLVIN 14-CV-03115-VEB

was based "primarily" on Plaintiff's subjective complaints disregards the treating therapist's extensive experience, multiple mental health evaluations of Plaintiff, and extended opportunities for clinical observations during individual and group therapy sessions.

Third, the ALJ's suggestion that there is an inconsistency between the treatment notes/plans and Ms. Didier's assessment is not supported by the evidence. Although the treatment notes did document some periods of relative improvement and/or stability, multiple treatment notes described Plaintiff as "tearful" with a "sad" and "depressed" affect. (T at 436-37, 530-31, 545-46, 577-78, 722-23). In addition, even during those periods, Plaintiff's providers still continued to assess significant limitations. (T at 425-30, 1119-25). In making this finding, the ALJ appears to have ignored the episodic nature of Plaintiff's mental health impairments. In this regard, Ms. Didier explained that Plaintiff "can look pretty good for a period of time or present well, but unpredictably is unable to maintain that and can be triggered and decompensate pretty quickly and then take hours or sometimes days to compensate and get back to her skill level." (T at 103). Indeed, while the treatment notes did sometimes document improvement or stability, this was frequently followed by setbacks and symptom aggravation. (T at 530-31, 577-78, 722-23).

DECISION AND ORDER – REICHERT v COLVIN 14-CV-03115-VEB

The Ninth Circuit has been clear that "it is error to reject a claimant's testimony merely because symptoms wax and wane in the course of treatment." *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014). "Cycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working." *Id.*

Lastly, the ALJ's consideration of Ms. Didier's treatment plan was flawed. One of Plaintiff's treatment plans indicated that Plaintiff wanted to "be able to maintain her relationship [with her significant other] and have a baby." (T at 999). The ALJ faulted Ms. Didier for failing to dissuade Plaintiff from attempting to become pregnant. (T at 32). However, Ms. Didier testified that she was concerned about the impact of stress of pregnancy and child rearing on Plaintiff and explained that she had discussed those concerns with her. (T at 99). It appears the ALJ believed Ms. Didier should have "vetoed" the inclusion of pregnancy as part of Plaintiff's treatment plan. The ALJ's second-guessing of Ms. Didier's therapeutic strategy was not supported by any evidence of record. Moreover, Ms. Didier's (apparently reluctant) decision to include this goal does nothing to undermine her overall assessment, which was based on her extensive experience, multiple

DECISION AND ORDER – REICHERT v COLVIN 14-CV-03115-VEB

opportunities to assess and evaluate Plaintiff over the course of several years, and numerous mental health evaluations.

The ALJ's decision to discount Ms. Didier's assessment cannot be sustained.

**2.        Treating Physicians**

In November of 2005, Dr. Cindy Horton, a treating physician, completed an evaluation of Plaintiff. She described Plaintiff as "severely limited due to mental constraints." (T at 443). She diagnosed Plaintiff with panic disorder, depression, and post-traumatic stress. (T at 443).

In May of 2006, Dr. Horton reported that Plaintiff had "SEVERE panic disorder with generalized anxiety disorder . . . ." (T at 475)(emphasis original). In August of 2006, Dr. Horton indicated that Plaintiff suffered from "SEVERE PTSD, Depression and Generalized Anxiety Disorder with panic attacks." (T at 448)(emphasis original). She reported that Plaintiff could not leave her home before noon daily and "frequently cannot last more than 4 hours in a work situation daily." (T at 448). Dr. Horton explained that Plaintiff had "lost many jobs" and "had difficulty finding an employer who can work within these parameters." (T at 448).

In May of 2008, Dr. Horton opined that Plaintiff's mental health impairments caused marked limitations with regard to her ability to perform routine tasks. (T at 543).

DECISION AND ORDER – REICHERT v COLVIN 14-CV-03115-VEB

In July of 2009, Dr. Rod Krehbiel, another treating physician, completed an evaluation. He diagnosed PTSD and opined that it caused a marked limitation with regard to Plaintiff's ability to perform one or more basic work-related activities. (T at 726). Dr. Krehbiel concluded that Plaintiff was "severely limited due to severe stress reaction" and "unable to work due to severe anxiety, nausea, [and] vomiting triggered by stress of workplace." (T at 726-27).

Dr. Erica Didier,[3] another treating physician, completed several assessments indicating significant functional limitations arising from Plaintiff's mental health impairments. (T at 744-45, 1000-01, 1126-27, 1268). For example, in April of 2011, Dr. Didier opined that the stress of working on a regular and continuing basis would exacerbate Plaintiff's symptoms and that she would miss 4 or more days of work per month due to her psychiatric conditions. (T at 1001). In March of 2014, Dr. Didier provided a letter to the ALJ advising that Plaintiff was "permanently disabled" by PTSD. She described Plaintiff was "incredibly motivated" to address her condition, but explained that it remained "permanent, lifelong with impairments that will prevent employment." (T at 1268).

The ALJ discounted the opinions of all three treating physicians. (T at 31, 33). The ALJ's decision was flawed. First, the ALJ appears to have considered

---

[3] Dr. Didier happens to be Ms. Didier's daughter.

each opinion in isolation, without considering the enhanced weight that should be afforded where, as here, every treating provider reached consistent conclusions regarding the significant work-related limitations imposed by Plaintiff's impairments.    Moreover, as discussed below, examining providers also found limitations consistent with the treating physicians' conclusions.

Second, the ALJ was too quick to dismiss the evaluations as being based on Plaintiff's subjective complaints.    It is reasonable for an ALJ to discount a physician's opinion predicated on subjective complaints found to be less than credible. *Bray v. Comm'r of Soc. Sec.*, 554 F.3d 1219, 1228 (9th Cir. 2009). However, "when an opinion is not more heavily based on a patient's self-reports than on clinical observations, there is no evidentiary basis for rejecting the opinion." *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014).    Indeed, "a patient's complaints or reports of [her] complaints, or history, is an essential diagnostic tool." *Williams v. Colvin*, 13-03005, 2014 U.S. Dist. LEXIS 6244, at *33 (E.D.Wa. Jan. 15, 2004).    Here, all of the treating physicians had opportunities to make clinical observations of Plaintiff.    Dr. Horton treated Plaintiff for at least three years; Dr. Didier had treated Plaintiff since January of 2008. (T at 1000, 468-513, 653-700).

DECISION AND ORDER – REICHERT v COLVIN 14-CV-03115-VEB

Third, as discussed above, the ALJ improperly relied on reports of improvement and/or periods of relative stability, without accounting for the unpredictable nature of Plaintiff's impairments.

Fourth, the ALJ placed undue emphasis on Plaintiff's ability to attend to activities of daily living (e.g., arriving on time to medical appointments). Her ability to sustain these basic activities outside of the demands of competitive, remunerative stress is not necessarily predictive of her ability to maintain such function if called upon to perform even low-stress work.

Indeed, Dr. Didier opined that the stress of working on a regular and continuing basis would exacerbate Plaintiff's symptoms and that she would miss 4 or more days of work per month due to her psychiatric conditions. (T at 1001). Individuals with chronic mental health problems "commonly have their lives structured to minimize stress and reduce their signs and symptoms." *Courneya v. Colvin*, No. CV-12-5044, 2013 U.S. Dist. LEXIS 161332, at *13-14 (E.D.W.A. Nov. 12, 2013)(quoting 20 C.F.R. Pt. 404, Subp't P, App. 1 § 12.00(D))*; see also Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012)("The critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons . . ., and is not held to a minimum standard of performance, as she would be

DECISION AND ORDER – REICHERT v COLVIN 14-CV-03115-VEB

by an employer. The failure to recognize these differences is a recurrent, and deplorable, feature of opinions by administrative law judges in social security disability cases.")(cited with approval in *Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014)).

Accordingly, this Court finds the ALJ's decision to discount the assessments of all three treating physicians cannot be sustained.

### 3.        Examining Providers

Dr. Kimberly Humann performed a consultative psychiatric evaluation in April of 2006. She diagnosed major depressive disorder with prominent anxiety and assigned a GAF score of 40 (T at 412), which "indicates some impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) or major impairment in several areas such as work or school, family relations, judgment, thinking or mood." *Tagin v. Astrue*, No. 11-cv-05120, 2011 U.S. Dist. LEXIS 136237 at *8 n.1 (W.D.Wa. Nov. 28, 2011)(citations omitted).

Dr. Scott Alvord performed a consultative psychiatric examination in February of 2009. Dr. Alvord found Plaintiff "somewhat histrionic," but described her prognosis as "guarded at best." (T at 708). He diagnosed panic disorder with agoraphobia, rule out PTSD, undifferentiated somatoform disorder (provisional), and histrionic personality traits. (T at 708). Dr. Alvord opined that Plaintiff had a

marked limitation with regard to responding appropriately to usual work situations and to changes in a routine work setting. (T at 709-10).

In September of 2010, Plaintiff underwent another consultative psychiatric examination.  Dr. Kari Heistand diagnosed PTSD, major depressive disorder, and anxiety disorder. (T at 732).  She assigned a GAF score of 40. (T at 733).  Dr. Heistand opined that Plaintiff's "symptoms would significantly interfere with her ability to function in any gainful employment." (T at 734).

The ALJ gave significant weight to Dr. Alvord's assessment, except for the examiner's conclusion that Plaintiff had a marked limitation with regard to responding appropriately to usual work situations and to changes in a routine work setting. (T at 31).  The ALJ found that aspect of Dr. Alvord's evaluation "not consistent with the overall medical record . . . ." (T at 31).  However, as discussed above, the overall medical record (including numerous assessments from treating providers and other examining physicians) support the conclusion that Plaintiff has marked limitations in this regard.

Moreover, the ALJ cited Dr. Alvord's observation that neurocognitive testing showed that Plaintiff was "functioning within normal limits globally" as a reason for discounting the finding of a marked limitation. (T at 31).  However, Plaintiff's difficulties with work routines and stress arise from panic disorder and PTSD and, as

DECISION AND ORDER – REICHERT v COLVIN 14-CV-03115-VEB

such, the lack of a cognitive deficit is not dispositive.  Moreover, Dr. Alvord's testing also showed "significant levels of psychological distress in the form of depression and anxiety, with a tendency toward somatic manifestation of mood symptoms." (T at 707).

The ALJ afforded little weight to Dr. Heistand's opinion, finding it based primarily on Plaintiff's subjective complaints. (T at 32).  However, Dr. Heistand performed a clinical interview and mental status evaluation. (T at 732-34).  In addition, the ALJ did not consider the consistency between Dr. Heistand's assessment and all of the treating/examining provider opinions outlined above.

Lastly, the ALJ failed to address Dr. Humann's assessment at all. "Where an ALJ does not explicitly reject a medical opinion or set forth specific, legitimate reasons for crediting one medical opinion over another, he errs. In other words, an ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion." *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014).

The ALJ relied almost exclusively on the opinions of Dr. Mary Gentile and Dr. Patricia Kraft, non-examining State Agency review physicians. (T at 31).  Dr.

DECISION AND ORDER – REICHERT v COLVIN 14-CV-03115-VEB

Gentile assessed no significant limitations with regard to Plaintiff's ability to make simple work-related decisions and only moderate limitations as to her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods. (T at 450-51). She assessed no significant limitations with regard to Plaintiff's ability to respond appropriately to changes in the work setting. (T at 451). Dr. Kraft affirmed Dr. Gentile's findings. (T at 524).

The ALJ afforded significant weight to these opinions, effectively giving them greater weight than *all* of the numerous assessments providing by treating and examining physicians. (T at 31). However, the opinion of a non-examining, State Agency physician does not, without more, justify the rejection of an examining physician's opinion. *Lester v. Chater*, 81 F.3d 821, 831 (9th Cir. 1995)(citing *Pitzer v. Sullivan*, 908 F.2d 502, 506 n.4 (9th Cir. 1990)).

Moreover, in this case, the non-examining opinions were rendered in September and December of 2006 respectively (T at 452, 524). Thus, the consultants did not have the benefit of reviewing the significant quantity of evidence, including numerous evaluations by treating providers and two consultative examinations, all of which occurred after 2006. The ALJ did not note this fact or

DECISION AND ORDER – REICHERT v COLVIN 14-CV-03115-VEB

explain why these stale opinions by non-examining consultants were nevertheless entitled to more weight to numerous, contemporaneous assessments by treating and examining providers.

## B.    Credibility

A claimant's subjective complaints concerning his or her limitations are an important part of a disability claim. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004)(citation omitted). The ALJ's findings with regard to the claimant's credibility must be supported by specific cogent reasons. *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). "General findings are insufficient: rather the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Leste*r, 81 F.3d at 834; *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

In this case, Plaintiff testified as follows: She did not graduate from high school, but received her GED. (T at 54).  She lives alone in a travel trailer. (T at 54). Extreme panic attacks resulting in dehydration and hospitalization occur "maybe once a year." (T at 57-58). She attends to self-care, does laundry, cooks, and shops. (T at 58).  Her energy level is "[s]poradic at best, chaotic." (T at 61).  Certain smells

and sounds cause panic attacks, which render Plaintiff "completely debilitated." (T at 61-62, 88). Symptoms include tears, nausea, shaking, cold sweats, and diarrhea. (T at 61). She has some nausea every day and deals with a moderate panic attack two or three days per week. (T at 62). The attacks are unpredictable. (T at 62). She has feelings of guilt and worthlessness and difficulty with concentration. (T at 63).

At the second hearing, nearly three years later, Plaintiff explained that she tried to live a structured life. (T at 68-69). She believes her condition is getting worse, with daily panic attacks. (T at 89). She has done odd jobs for a friend, but the friend imposes no deadlines or pressure. (T at 95).

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that her statements concerning the intensity, persistence, and limiting effects of the symptoms were not fully credible. (T at 28).

This Court has no hesitancy in finding the ALJ's credibility assessment to be in error. The ALJ found Plaintiff's testimony contradicted by the "objective medical record." (T at 28). However, as outlined below, Plaintiff's claims were amply supported by assessments from numerous treating and examining providers, all of whom had the opportunity to observe and evaluate Plaintiff. The ALJ cited notes in various reports to the effect that Plaintiff was able to present at medical

DECISION AND ORDER – REICHERT v COLVIN 14-CV-03115-VEB

appointments without grooming or hygiene concerns and demonstrate normal thought processes. (T at 28).  As noted above, the ALJ's finding (1) demonstrates a lack of understanding of and appreciation for the cyclical nature of mental illness and (2) ignores numerous notations that Plaintiff "burst into tears" during appointments (T at 412) and displayed "significant levels of psychological distress." (T at 707).

The ALJ noted Ms. Didier's conclusion that Plaintiff was committed to working on improving her mental health, but then discounted her credibility based on his belief that a "similar commitment to attempting to find suitable employment appear[ed] to be lacking." (T at 31).  This conclusion was without support.  In fact, the record indicates that Plaintiff tries very hard to address her mental health, is motivated to find work, looked for part-time employment, and met with an employment specialist, but, in the opinions of her treating and examining medical providers, is nevertheless precluded from meeting the demands of even low-stress work due to her rather intractable and quite unpredictable mental health issues. (T at 92-93, 274-75, 539, 579, 720, 805-06).

## C.    Listing 12.04

At step three of the sequential evaluation, the ALJ must determine whether the claimant has an impairment or combination of impairments that meets or equals an

impairment listed in Appendix 1 of the Regulations (the "Listings"). *See* 20 C.F.R. §§ 404.1520(d), 416.920(d). If a claimant meets or equals a listed impairment, he or she is "conclusively presumed to be disabled and entitled to benefits." *Bowen v. City of New York*, 476 U.S. 467, 471, 106 S. Ct. 2022, 90 L. Ed. 2d 462 (1986); *see also Ramirez v. Shalala*, 8 F.3d 1449, 1452 (9th Cir. 1993); *see also* 20 C.F.R. §§ 404.1525(a); 416.925(a).

An impairment meets a Listing if the impairment matches all of the medical criteria specified in the Listing. *Sullivan v. Zebley*, 493 U.S. 521, 530, 110 S. Ct. 885, 107 L. Ed. 2d 967 (1990); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). An impairment or combination of impairments that satisfies, but not all of the criteria, does not qualify. *Sullivan*, 493 U.S. at 530; *Tackett*, 180 F.3d at 1099.

The claimant bears the burden of proving that she has an impairment or combination of impairments that meets or equals the criteria of a listed impairment. To satisfy this burden, the claimant must offer medical findings equal in severity to all requirements, which findings must be supported by medically acceptable clinical and laboratory diagnostic techniques. 20 C.F.R. § 416.926(b).

If a claimant's impairment does not satisfy the Listings criteria, he or she may still be disabled if the impairment "equals" a listed impairment. 20 C.F.R. § 404.1520(d). Equivalence will be found if the medical findings are (at a minimum)

equal in severity and duration to the Listed impairment. *Marcia v. Sullivan*, 900 F.2d 172, 175 (9th Cir. 1990). To determine medical equivalence, the Commissioner compares the findings concerning the alleged impairment with the medical criteria of the listed impairment. 20 C.F.R. §§ 416.924(e), 416.926.

If a claimant has multiple impairments, the ALJ must determine "whether the combination of [the] impairments is medically equal to any listed impairment." 20 C.F.R. § 404.1526(a). The claimant's symptoms "must be considered in combination and must not be fragmentized in evaluating their effects." *Lester v. Chater*, 81 F.3d 821, 829 (9th Cir. 1996). "A finding of equivalence must be based on medical evidence only." *See Lewis v. Apfel*, 236 F.3d 503, 514 (9th Cir. 2001)(citing 20 C.F.R. § 1529(d)(3)).

"[I]n determining whether a claimant equals a listing under step three . . . the ALJ must explain adequately his evaluation of alternative tests and the combined effects of the impairments." *Marcia*, 900 F.2d at 176 (9th Cir. 1990). A remand may be required if ALJ fails adequately to consider a Listing that plausibly applies to the claimant's case. *See Lewis*, 236 F.3d at 514.

Bipolar disorder is an "affective disorder" addressed in § 12.04 of the Listings. Subsection "C" of Listings § 12.04, which is at issue here, is satisfied if the claimant has at least "medically documented history of a chronic affective

disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and … [a] residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate . . . ."

In this case, the ALJ determined that Plaintiff did not satisfy § 12.04 of the Listings. In particular, the ALJ concluded that Plaintiff has not demonstrated an inability to respond adequately to minimal increased in mental demands. (T at 26). However, the treating and examining providers reached precisely the opposite conclusion, including (in particular) Ms. Didier (T at 790) and Dr. Alvord (T at 710). The ALJ's analysis is flawed for the reasons outlined above.

**D.    Step Five Analysis**

At step five of the sequential evaluation, the burden is on the Commissioner to show that (1) the claimant can perform other substantial gainful activity and (2) a "significant number of jobs exist in the national economy" which the claimant can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984). If a claimant cannot return to his previous job, the Commissioner must identify specific jobs existing in substantial numbers in the national economy that the claimant can perform. See

*Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir.1995). The Commissioner may carry this burden by "eliciting the testimony of a vocational expert in response to a hypothetical that sets out all the limitations and restrictions of the claimant." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir.1995). The ALJ's depiction of the claimant's disability must be accurate, detailed, and supported by the medical record. *Gamer v. Secretary of Health and Human Servs.*, 815 F.2d 1275, 1279 (9th Cir.1987). "If the assumptions in the hypothetical are not supported by the record, the opinion of the vocational expert that claimant has a residual working capacity has no evidentiary value." *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984).

Here, the ALJ's step five analysis relied on the testimony of Jennifer Gaffney, a vocational expert.  (T at 82).  However, the hypothetical questions presented to Ms. Gaffey by the ALJ assumed a claimant able to perform unskilled work and routine work tasks. (T at 107).  As outlined above, the overwhelming evidence demonstrated the Plaintiff could not consistently demonstrate these abilities and, in fact, would likely experience marked panic attacks and other difficulties if required to attend to the changes and other demands of regular work activities.  Accordingly, the opinion of the vocational expert has no evidentiary value and cannot support the ALJ's conclusion.

## C.    Remand

In a case where the ALJ's determination is not supported by substantial evidence or is tainted by legal error, the court may remand for additional proceedings or an immediate award of benefits. Remand for additional proceedings is proper where (1) outstanding issues must be resolved, and (2) it is not clear from the record before the court that a claimant is disabled. *See Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004).

In contrast, an award of benefits may be directed where the record has been fully developed and where further administrative proceedings would serve no useful purpose. *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996).  Courts have remanded for an award of benefits where (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited. *Id*. (citing *Rodriguez v. Bowen*, 876 F.2d 759, 763 (9th Cir.1989); *Swenson v. Sullivan*, 876 F.2d 683, 689 (9th Cir. 1989); *Varney v. Sec'y of Health & Human Servs*., 859 F.2d 1396, 1401 (9th Cir.1988)).

Here, this Court finds that a remand for calculation of benefits is the appropriate remedy.  Indeed, in this Court's many years of reviewing Social Security

DECISION AND ORDER – REICHERT v COLVIN 14-CV-03115-VEB

disability cases, it is difficult to recall a case where the evidence more clearly supported a finding of disability.  The record contains no less than *twenty-one* (21) assessments of very significant work-related limitations.  These limitations were consistently assessed by treating and examining providers over the course of several years, with some of the providers have extended opportunities to observe, assess, and treat Plaintiff. There are no outstanding issues that must be resolved before a determination of disability can be made.

## IV. ORDERS

IT IS THEREFORE ORDERED that:

Plaintiff's motion for summary judgment, Docket No.  17, is GRANTED.

The Commissioner's motion for summary judgment, Docket No. 24, is DENIED.

This case is remanded for calculation of benefits,

The District Court Executive is directed to file this Order, provide copies to counsel, enter judgment in favor of Plaintiff, and close this case.

DATED this 15th day of June, 2015

/s/Victor E. Bianchini
VICTOR E. BIANCHINI
UNITED STATES MAGISTRATE JUDGE

DECISION AND ORDER – REICHERT v COLVIN 14-CV-03115-VEB